# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>Information associated with phone number 331-212-0491, serviced by Verizon, as more fully described in Attachment A. | ) | Case No. 26-963M(NJ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ________ District of ________
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 7/31/2026 *(not to exceed 14 days)*

❒ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Hon. Nancy Joseph.
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for ____ days *(not to exceed 30)* ☑ until, the facts justifying, the later specific date of 10/15/2026.

Date and time issued: 7/17/2026 @ 12:05 p.m.

Nancy Joseph
*Judge's signature*

City and state: Milwaukee, Wisconsin

U.S. Magistrate Judge Nancy Joseph
*Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ______________________

______________________________
*Executing officer's signature*

______________________________
*Printed name and title*

## ATTACHMENT A

**Property to Be Searched**
**Matter No. 2026R00078**

1. Records and information associated with the cellular device assigned **call number (331) 212-0491** (referred to herein and in Attachment B as "the **Target Cell Phone**"), with no listed subscriber(s) that is in the custody or control of Verizon Wireless (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921.

2. The **Target Cell Phone**.

# ATTACHMENT B

## Particular Things to be Seized
## Matter No. 2026R00078

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the **Target Cell Phone** for the time period of July 17, 2025, through the present:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records**;** and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Cell Phone**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the **Target Cell Phone** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the **Target Cell Phone** will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Cell Phone**.

c. Information about the location of the **Target Cell Phone** for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and

with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 514(a)(2) (presenting fictitious obligations), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 1344 (bank fraud) involving ANDREW AUGUSTIN from July 17, 2025 onward.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Information associated with phone number 331-212-0491, serviced by Verizon, as more fully described in Attachment A.

Case No. 26-963M(NJ)

Matter No. 2022R00208

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ____________ District of ____________, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ❒ contraband, fruits of crime, or other items illegally possessed;
- ❒ property designed for use, intended for use, or used in committing a crime;
- ❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. Sections 514(a)(2), 1343, and 1344 | Presenting fictitious obligations, wire fraud, and bank fraud |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* 10/15/2026 *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

SHANE HOFFMANN Digitally signed by SHANE HOFFMANN Date: 2026.07.16 11:23:36 -05'00'

*Applicant's signature*

Shane Hoffmann, FBI SA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 7/17/2026

Nancy Joseph

*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Shane Hoffmann, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(331) 212-0491** (the "**Target Cell Phone**"), whose service provider is Verizon Wireless ("Service Provider") a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

3. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since September 2015. I am currently assigned to the Milwaukee Division – Madison Resident Agency. Since becoming a Special Agent, I have received specialized training in conducting criminal investigations, and my responsibilities include conducting investigations of alleged criminal violations of federal statutes and laws. I have participated in the execution of

search warrants in various judicial districts, including the recovery of records, contraband, and other types of property. I have received training in computer technology, and I have on numerous occasions reviewed the content of targets' phones and computers, email accounts, and social media accounts for evidence of criminal activity. I have also on numerous occasions reviewed historical and prospective cell site location information associated with targets' phones.

4. The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other law enforcement personnel and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 514(a)(2) (presenting fictitious obligations), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 1344 (bank fraud) have been committed, are being committed, and/or will be committed by ANDREW AUGUSTIN. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## TARGET CELL PHONE

7. This affidavit is made in support of an application for historical and prospective cell site location information for phone number **(331) 212-0491**, the **Target Cell Phone**. For reasons explained further below, investigators believe AUGUSTIN uses this phone number to facilitate a lien-washing scheme.

## PROBABLE CAUSE

8. The United States, including the Federal Bureau of Investigation is conducting a criminal investigation of ANDREW AUGUSTIN, date of birth 11/5/88, and others known and unknown regarding possible violations of 18 U.S.C. § 514(a)(2) (presenting fictitious obligations), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 1344 (bank fraud).

9. ANDREW AUGUSTIN has been identified as an individual partaking in the illegal trafficking of stolen vehicles. Particularly, the investigation has focused on AUGUSTIN's involvement in removing liens from vehicle titles (also referred to as "lien washing"). Based on the investigation to date, the evidence indicates that AUGUSTIN and/or his associates will procure a vehicle that has a lien, fraudulently create a new (false) title showing no lien, title the vehicle through a state's Department of Motor Vehicles (DMV) using the false title, and then sell the vehicle with a purportedly unencumbered title. The buyer, often a dealership, believes it is buying a vehicle with no lien and issues a check payable to AUGUSTIN and/or his company, Citadel Motors as payment for the vehicle. To date, investigators have identified approximately ten vehicles for which investigators believe AUGUSTIN has fraudulently altered the titles, with a total loss amount surpassing $500,000. The conduct has spanned multiple states, including Wisconsin, Illinois, and Florida, extending from the time period of 2025 through 2026. AUGUSTIN has both fraudulently titled and sold numerous vehicles in this federal district.

10. The following paragraphs include examples of vehicles involved in AUGUSTIN's lien-washing scheme.

### AUGUSTIN's Lien-Washing Scheme

Black 2018 Mercedes Benz E Class (VIN: WDDZF6EB9JA398474) (Vehicle 939)

11. Records from Navy Federal Credit Union (NFCU) indicate that on or about August 31, 2021, AUGUSTIN purchased a Black 2018 Mercedes Benz E Class bearing vehicle

identification number (VIN) WDDZF6EB9JA398474 from Motor Werks in Barrington, Illinois. Financing in the amount of approximately $66,000 (not including finance charges) was secured through NFCU. This vehicle will hereinafter be referred to as Vehicle 939, which corresponds to the vehicle number assigned by investigators for the purpose of organizing the investigation. AUGUSTIN provided email address augustin.svc@gmail.com on the loan application along with address 742 Lily Cache Lane, Bolingbrook, Illinois. AUGUSTIN represented to the credit union that he was employed by Best Choice LLC for seven years and made $7,666.00 per month.

12. On or about October 29, 2021, legitimate Illinois title number 21302696413 / control number R8594259 was issued for Vehicle 939 in the name of ANDREW AUGUSTIN. The lienholder was listed as Navy Federal Credit Union.

13. In February 2024, AUGUSTIN's NFCU loan was charged off in the amount of approximately $52,000. Payment records from Navy Federal Credit Union indicate that the last payment received on the account was in October 2023.

14. On or about November 18, 2024, AUGUSTIN sold Vehicle 939 to Carvana for a net payment of $27,310. The vehicle was picked up by Carvana at 742 Lily Cache Lane, Bolingbrook, IL. AUGUSTIN provided fraudulent Illinois title number 21302696413 / control number G00330366 in his name which showed no lien. The following day, Old National Bank records show that an account in AUGUSTIN's name received a wire transfer from Carvana for the referenced amount.

Gray 2025 Toyota Camry XLE (VIN: 4T1DBADK7SU025157) (Vehicle 915)

15. Records from Exeter Finance indicate that on or about July 17, 2025, AUGUSTIN purchased a gray 2025 Toyota Camry XLE with vehicle identification number (VIN) 4T1DBADK7SU025157 from Lombard Toyota in Illinois. This vehicle will hereinafter be referred to as Vehicle 915. AUGUSTIN provided address 742 Lily Cache Lane, Bolingbrook, Illinois, and

the **Target Cell Phone** as his contact information. Financing in the amount of approximately $27,000 (not including finance charges) was secured through Exeter. AUGUSTIN told the lender that he was employed in sales by Best Choice LLC for seven years and made $9,333.00 per month.

16. On or about August 14, 2025, legitimate Illinois title number 25226700137 / control number U8688787 was issued for Vehicle 915 in the name of ANDREW AUGUSTIN. The lienholder was listed as Exeter Finance LLC.

17. Records from the Wisconsin Department of Financial Institutions showed that on or about August 8, 2025, Citadel Motors Inc. was registered with an incorporator listed as ANDREW AUGUSTIN and address 2325 Verlin Rd, Green Bay, WI.

18. Records from the Wisconsin Department of Motor Vehicles show that on or about November 12, 2025, AUGUSTIN registered and titled Vehicle 915 in Wisconsin under Citadel Motors, address 2325 Verlin Road, Green Bay, Wisconsin. A fraudulent Illinois title number 25226700137 / control R0186363 in the name of Edi Ferro Gonzalez was surrendered. The title did not indicate a lien. The title purported to show that Citadel Motors purchased the car on November 11, 2025, from someone named Edi Ferro Gonzalez. An Illinois driver's license in AUGUSTIN's name was presented at the DMV.

19. Records from the Brookfield Police Department show that on November 13, 2025, officers responded to Toyota of Brookfield in response to AUGUSTIN trying to sell Vehicle 915. Databases checked by employees showed a lien on Vehicle 915; however, the Wisconsin title in the name of Citadel Motors obtained by AUGUSTIN on November 12 (a day prior) did not show a lien. After questioning AUGUSTIN, police allowed AUGUSTIN to leave with Vehicle 915. It is noted that Toyota of Brookfield previously purchased a 2021 Volkswagen Tiguan (Vehicle 917) from AUGUSTIN in March 2025. Investigators believe the Wisconsin title signed over by AUGUSTIN for Vehicle 917 was also obtained using a fraudulent Illinois title.

20. Records from Carvana show that in February 2026, AUGUSTIN sold Vehicle 915 to Carvana. The sale appears to be legitimate as Exeter said that their remaining loan balance in the amount of approximately $26,000 was satisfied. Based on my training and experience, I believe AUGUSTIN sold Vehicle 915 legitimately because law enforcement responded during his attempted fraudulent sale to Toyota of Brookfield in November 2025.

<u>White 2022 Hyundai Santa Cruz DEL Premium (VIN: 5NTJDDAF9NH000321)</u>

<u>(Vehicle 914)</u>



21. Records from US Bank indicate that on or about May 18, 2024, Latanesha Sheley purchased a white 2022 Hyundai Santa Cruz with vehicle identification number (VIN) 5NTJDDAF9NH000321 from Ettleson Hyundai in Countryside, Illinois, for approximately $44,000. This vehicle (pictured above) will hereinafter be referred to as Vehicle 914.

22. On or about July 10, 2024, legitimate Illinois title number 24192698539 / control number U5972449 was issued for Vehicle 914 in the name of Latanesha Sheley. The lienholder was listed as US Bank.

23. US Bank records show that the loan for Vehicle 914 was charged off in 2025 in the amount of approximately $34,000. In total, five payments were credited to the loan with the last payment made in December 2024.

24. Records from the Wisconsin Department of Motor Vehicles show that on or about October 14, 2025, AUGUSTIN registered and titled Vehicle 914 in Wisconsin under Citadel

Motors, address 2325 Verlin Road, Green Bay, Wisconsin. A fraudulent Illinois title number 24192698539 / control number R5001329 in the name of Montinique Carson was surrendered. The title did not indicate a lien. The title purported to show that on October 10, 2025, Carson sold Vehicle 914 to Citadel Motors Inc. An Illinois driver's license in AUGUSTIN's name was presented to the DMV.

25. In a letter dated November 18, 2025, the Wisconsin Department of Transportation notified Citadel Motors that the Wisconsin title issued for Vehicle 914 was cancelled because it had been issued upon the submission of a fraudulent Illinois title.

26. Records from Copart show that on December 24, 2025, AUGUSTIN sold Vehicle 914 to Copart for $14,500. AUGUSTIN provided the **Target Cell Phone** as his contact number and signed over the Wisconsin title fraudulently obtained in October 2025 (which did not show a lien). Vehicle 914 was picked up from 5S525 Scots Dr, Naperville, Illinois, an address that the investigation has associated with AUGUSTIN.

27. Citibank records show that on December 24, 2025, a Copart check in the amount of $14,500 was deposited into AUGUSTIN's Citadel Motors account.

Orange 2023 Dodge Challenger SRT Hellcat Jailbreak (VIN: 2C3CDZC99PH558472)

(Vehicle 942)



28. Records from First Service Credit Union indicate that on or about October 4, 2025, Darien Williams purchased an orange 2023 Dodge Challenger SRT Hellcat Jailbreak with vehicle

identification number (VIN) 2C3CDZC99PH558472 from Exotic Auto Gallery in Houston, Texas for approximately $78,000. This vehicle (pictured above) will hereinafter be referred to as Vehicle 942. Financing was secured from First Service Credit Union.

29. On or about November 6, 2025, legitimate Texas title number 10174545957250006 was issued for Vehicle 942 in the name of Darien Williams.

30. State of Florida records show that around November 17, 2025, Citadel Motors was incorporated in Florida by AUGUSTIN with an address listed in Springfield, Illinois.

31. State of Florida records show that on January 17, 2026, AUGUSTIN / Citadel Motors purchased Vehicle 942 from Darien Williams for $35,000.

32. On January 28, 2026, AUGUSTIN applied for a Florida title in the name of Citadel Motors. A fraudulent Texas title with number 10174545957250006 / control 73217039 was surrendered in the name of Darien Williams showing an issue date of November 6, 2025. There was no lien listed on the Texas title. On February 13, 2026, AUGUSTIN transferred the Florida title into his name. An Illinois driver's license in AUGUSTIN's name was presented.

33. Records from Maus Acura in North Tampa, Florida, show that on February 17, 2026, AUGUSTIN sold Vehicle 942 to Maus Acura for $47,000. AUGUSTIN provided the **Target Cell Phone** as his contact number and signed over the Florida title in his name which indicated no lien on the vehicle. A check for the referenced amount was deposited into AUGUSTIN's Citibank business account in the name of Citadel Motors on the same day as the sale to Maus Acura.

34. In March 2026, First Service Credit Union filed a report with the Houston Police Department after not receiving any payments on the loan. Vehicle 942 was recovered from Maus Acura the same month.

## AUGUSTIN's Use of the Target Cell Phone

35. The **Target Cell Phone**, **(331) 212-0491,** is serviced by Verizon. Subscriber information received from Verizon did not list a subscriber name and provided an address of 6500 Emerald Parkway, Dublin, Ohio. The listed effective date was June 21, 2024.

36. As described above, AUGUSTIN has listed the **Target Cell Phone** as his contact number when securing financing for the purchase of a vehicle and when selling lien-washed vehicles to dealerships.

37. Further, the Target Cell Phone is the listed recovery phone number for a Google account associated with AUGUSTIN, augustin.svc@gmail.com. In August 2021, when AUGUSTIN purchased Vehicle 939 from Motor Werks in Barrington, Illinois, with financing through NFCU, AUGUSTIN provided email address augustin.svc@gmail.com on the loan application. Subscriber information received from Google in April 2026 for email address augustin.svc@gmail.com showed a subscriber name of ANDREW AUGUSTIN, an account creation date of 9/17/13, and listed the **Target Cell Phone** as the recovery number.

38. Historical and prospective location information associated with the **Target Cell Phone** is likely to lead to evidence of AUGUSTIN's crimes, both because it could provide further attribution evidence for the number AUGUSTIN has used to facilitate his scheme, and because it will help to identify locations (including, for example, banks and car dealerships) where AUGUSTIN has visited and will visit during his ongoing scheme, which will assist law enforcement with investigating the scope of AUGUSTIN's conduct.

## TECHNICAL BACKGROUND

### Cell-Site Data

39. Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and

experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

40. Based on my training and experience, I know that Verizon also can collect per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

**E-911 Phase II / GPS Location Data**

41. I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly,

cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

**Pen-Trap Data**

42. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

**Subscriber Information**

43. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent

or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators and/or victims.

## CONCLUSION

44. The evidence described above illustrates that AUGUSTIN has been participating in vehicle theft via a lien-washing scheme throughout 2025 and into 2026. Of the ten vehicles the investigation has associated with AUGUSTIN to date, AUGUSTIN was the original purchaser and lien holder on four of them, with the earliest purchase dating back to 2021. Additionally, records from Wisconsin and Illinois do not show any reported wages for AUGUSTIN from 2023 through June 2026 which contradicts employment information he provided on loan applications. Throughout 2025, AUGUSTIN titled eight of the ten vehicles in Wisconsin after surrendering altered out of state titles that had liens fraudulently removed. Many of the vehicles were then sold to dealers in southeast Wisconsin or Illinois who purchased the vehicles under the false impression that the liens had been satisfied. AUGUSTIN has shown an increased level of sophistication to his conduct by incorporating a business, Citadel Motors, to try to further mask his actions.

45. In 2026, AUGUSTIN expanded the geographic range of his conduct by lien washing a vehicle (942) originally purchased in Texas through Florida. Based on my training and experience, I believe AUGUSTIN expanded the geographic range of his conduct due to his law enforcement encounter in Wisconsin during his attempted sale of Vehicle 915. Based on AUGUSTIN's history, I believe that AUGUSTIN is likely to continue committing these crimes; he has repeated the scheme many times already (that law enforcement is aware of) and he appears to have no other source of income.

46. The **Target Cell Phone** has been connected to AUGUSTIN through subscriber data from an email account in his name and via paperwork from multiple vehicles as described above. I know that Verizon, the provider of the **Target Cell Phone**, maintains historical cell tower records for a period of one year.

47. Based on my training and experience, I know that the described conduct can take months or even years to transpire as there are multiple steps involved, including acquiring a financed vehicle, obtaining the fraudulent paperwork, titling and/or registering the vehicle with the fraudulent paperwork, and selling the vehicle. Additionally, there is usually a lag time between the execution of the listed steps and the discovery of such conduct by law enforcement making it difficult for law enforcement to act in real time. Therefore, I request that the Court authorize the collection of both historical cell tower location for the time period of July 17, 2025, to the present, and prospective cell tower location data for the **Target Cell Phone**. Historical records will aid investigators in confirming the location of the **Target Cell Phone** during AUGUSTIN's known conduct, while also possibly aiding in developing evidence regarding unknown illegal conduct. Prospective cell tower location information will allow investigators to carry out more real time investigative actions; aiding in efforts to conduct surveillance, determine AUGUSTIN's residence, and identify other locations of investigative interest. This is especially important since AUGUSTIN has recently expanded the geographic location of his conduct. Further, both historical and prospective location information will aid investigators in identifying any associates of AUGUSTIN's such as suppliers of vehicles and/or suppliers of fraudulent titles. Based on my training and experience, and knowledge gained through working large scale vehicle theft/fraud, I know that there is usually an underlying network of individuals that is relied upon to support and carry out such conduct.

48. In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

49. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

50. I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

51. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice, after the collection authorized by the warrant has been completed, until **October 15, 2026,** by which

time investigators expect the investigation will be overt. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

52. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

# <u>ATTACHMENT A</u>

**Property to Be Searched**
**Matter No. 2026R00078**

1. Records and information associated with the cellular device assigned **call number (331) 212-0491** (referred to herein and in Attachment B as "the **Target Cell Phone**"), with no listed subscriber(s) that is in the custody or control of Verizon Wireless (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921.

2. The **Target Cell Phone**.

## ATTACHMENT B

### Particular Things to be Seized
### Matter No. 2026R00078

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the **Target Cell Phone** for the time period of July 17, 2025, through the present:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records**;** and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Cell Phone**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the **Target Cell Phone** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the **Target Cell Phone** will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Cell Phone**.

c. Information about the location of the **Target Cell Phone** for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and

with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 514(a)(2) (presenting fictitious obligations), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 1344 (bank fraud) involving ANDREW AUGUSTIN from July 17, 2025 onward.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.